Good morning, Your Honor. May it please the court. The appellant challenges the district court's denial of defendant's motion to suppress evidence and statements. First, we will challenge the validity of the search warrant in that it did not have sufficient probable cause to support it and that the information was omitted from the search warrant that had it been included would not have supported a finding of probable cause. We will further challenge that the statements made were the result of an illegal detention and the statements both before and during the search were warrant and must be suppressed. Your Honor, I would like to start here with the search warrant, what this case is basically about. And the search warrant in this case was applied for by Officer Joyner on June 8th, 2018. He applied for a warrant to a circuit judge in the city of St. Louis. And the search warrant was for an address 3931 California within St. Louis boundaries. The affidavit, as we see, named an individual that started this investigation, an individual that will go by the name of John Doe approached Officer Joyner on June 3rd of 2018 and shared with him some information about an individual, Daniel Evans, that he claimed was running a drug business out of that California address. He told Detective Joyner that he saw him selling and possessing heroin, fentanyl, crack, and marijuana. And he also told Officer Joyner that he saw him also selling it out of his vehicle and that he knew that Mr. Evans possessed a gun. With this information, Detective Joyner started his investigation. Counsel, is there any basis to suppress other than your argument that the reliability of John Doe was not sufficiently established? Well, in other words, do you concede the information provided by a reliable informant was sufficient? Well, that's the thing. This informant was not reliable. No, please answer my question. Do you concede that the information was sufficient if John Doe was a source of information that was sufficiently reliable? Yes. Now my key question. Do you have a case where a warrant was overturned for this reason, when the person whose reliability is at issue appeared before the magistrate and signed a statement in the presence of the magistrate who issued the warrant? Your Honor. I can't imagine there is such a case, but I'd be welcomed. I need to read it if there is. Your Honor, I did not find any case to that because when Officer Joyner brought John Doe to Chambers when he applied for warrant, John Doe said nothing, and that's proven in the case. He signed a statement. He signed a statement in the presence of the magistrate, right? Correct, and he wasn't questioned. He wasn't anything. It was staging. He was brought there as window dressing to show to the judge that there was a real... Oh heavens, counsel, that's simply not so. We don't give these magistrates any credit at all to be able to look the source in the eye and read the presentation and not question if the magistrate has doubts. Your Honor, this judge that they applied the it was on this affidavit that he applied. That's it. They didn't know that John Doe had never supplied information to the court before, had never sworn out a warrant before or anything. The law says that if you have an untested informant, you must corroborate facts that they but didn't the officer corroborate much of the information prior? I mean, he surveilled the home. He saw people there. He saw foot traffic. He confirmed the address. Okay, the law on all the cases say you must use common sense, a totality of the circumstance, and that doesn't work one way. It just doesn't work just for the police. When we look at the totality of the circumstances, common sense, we will look at his investigation. It started on 6-4. He drove by the house. He didn't even know how many times, maybe two, maybe three. He saw some foot traffic. Well, it's a residential house. Okay, how did he prove that there was any drug dealings inside? He never saw Mr. Evans dealing drugs. That's not the standard. It's a probable cause standard. He doesn't need to prove that there are drugs in the house. He just needs to corroborate John Doe's tip. So we can get a search warrant on a couple people going in the house. What case law says you can see in a residence that a couple people come to and from a house? He didn't describe heavy foot traffic, and he never canvassed the neighborhood to see if the a tough ask. You're going to tip him off if you're talking to all of his neighbors. Is there a case that suggests that's required? Again, we're talking about investigation. We're talking about a seasoned policeman who had DEA available to him. He had other narcotics officers available. He never even did. His stationary surveillance was a little bit of a morning where he saw one individual go in the house. One white man went in the house. That's his probable cause. Did he stop that person to see if he was holding? No. Did he run license plates of the cars that he saw in front of it? No. He never substantiated by independent corroboration the claims made by this unknown informant. In the affidavit, when he gives the direct language in the affidavit, I was contacted by John Doe, who informed me. How misleading is that to a judge? He didn't say I was contacted by John Doe, an unknown informant. That puts the judge on notice that they need more detail on what Officer Joyner did, what his independent investigation was. There was no investigation. When Officer Joyner found out that Mr. Evans had a criminal record that included drugs and guns, his investigation stopped. Any serious investigation stopped. I've been handling these kind of cases for 30 plus years. This is not a good investigation. Anybody thinks that he didn't even do simple investigative procedures that he was trained on. He didn't talk to people. He didn't have anybody grab those people when he saw people exiting, when he was doing his drive-by. He doesn't know how many times he did it. He doesn't know how many people he saw. How does that corroborate what this unknown source says? How does seeing one person come out of a house, there's no picture, there's no wire, there's no controlled buys. He could have got the unknown informant to do a buy the next day. Because according to Joyner, just before he applied for the affidavit on June 7th, the unknown informant went back into the house. Who is this unknown informant? Assuming we agree with you, why doesn't the good faith exception apply here? The good faith exception. The good faith exception would be there if he did some investigation. What we're trying to do here is the ends justify the means. We're saying that they found drugs here, therefore it must be all good faith. There's no good faith on this detective when he investigated. He didn't investigate. We're allowing search warrants on an track record with the St. Louis police department. They have all kinds of CIs in St. Louis police department. They have a joint task force on the DEA and local police. Didn't you ask any of them if this address on California was a target? It's amazing how much the DEA knows in St. Louis. I do a lot of federal cases. This isn't an investigation that a federal investigators would have done. This started on the 3rd. He investigated on the 4th, 5th, and 6th. He did a stationary on the 7th, and he applied for a warrant on the 8th. How many times has the informant to swear on a warrant? Why do they need him there? They don't need him there. The only reason to bring that person there... I've seen it in at least one case, counsel. Okay, one case. How many search warrants are issued in the 8th district? Probably every day. Hundreds. This is a question of whether the magistrate messed up. The magistrate gets and gets great deference, and what he does is presumptively correct, and I frankly doubt that the four corners of the affidavit rules should apply in this situation. When the source is there as well as the applicant, and for the magistrate to question if the magistrate thinks it's warranted. Okay, are we talking about the federal magistrate or the circuit judge? I'm talking about the judge who signed the warrant. The judicial officer who signed the warrant. Okay, she didn't question anything. She just signed off on it. You weren't there. I wasn't there. She's looking at the affiant and the source. According to the transcript of the suppression hearing, she didn't ask any questions. That came out of Joyner, okay? Yes, but counsel, so we are to assume from that she was dozing? She didn't ask questions if she didn't see a need to ask questions. Well, the case law shows that if the affidavit has omitted something, it can be challenged. We're not challenging the four corners. We're challenging... Counsel, the challenge, as you well know, the challenge for omissions is a very high bar. Because the government has no duty to present any information other than what is necessary to establish probable cause. We have case after case that says that. Okay. So an omission has to be something that's a reckless disregard of what a issuing judge needs to know. Your Honor, a reckless disregard, what happened here is a search warrant was signed out on an unknown informant. He wasn't unknown. He was in the judge's presence. That's not unknown. He may have been unknown previously, unknown to Joyner, but we're being asked to second guess what the issuing magistrate did. Okay. Second guessed. Would it be fair to say that the court thinks that the investigation, standing by itself, could produce probable cause? You know, I'm not... If you're asking a question, you got the rules wrong here. Okay. Well, I claimed... My point is that when we look at the affidavit, his statements, what he did, what Joyner did, would not hold up to a probable cause being issued for a warrant. So what the judge saw is just the information from an unknown informant that was not backed up by independent corroboration and investigation. Wait, wait. An informant who confirmed slash corroborated his information by signing a written statement in the judge's presence. Oh, that's true. I can't argue with that. It makes a huge difference. It makes a huge difference. This is not a classic anonymous source. It may have been anonymous to Joyner before the exercise began, but it was not an anonymous source in the presence of the issuing magistrate. It was a live person there to be questioned, confirming and writing the information that was recited in the affidavit. The information was never corroborated. Never. And this person, as case law after case law says, has no track record, no buys, no wires, nothing. Just an individual off the street. And Joyner, in every testimony under oath, knows nothing about this person. Doesn't know this person. This person is the drug dealer. All we know is what he said to Joyner. It has never been corroborated. How is that not an omission to the magistrate? I'm just dealing with facts here. I'm dealing with facts that were given at hearings under oath. This John Doe never testified to the his demeanor couldn't be assessed. He wasn't asked questions. They didn't need to keep him under. But he was never challenged. But we're supposed to believe verbatim what he said when it's not corroborated, not corroborated by law enforcement? No, we have to decide if the warrant is no good because the magistrate believed it. Well, the standard is that things were omitted. You know, it's a frank standard and also U.S. versus Reinhart. You can challenge a warrant in two ways. First, it was a lie. And we're not saying that here. We're saying that they omitted a very pertinent fact that this John Doe had was unknown. If that would have been put in the warrant, I think the magistrate, the circuit judge, would have inquired questions. That information was kept from her. And it was kept for a reason. So he wouldn't be challenged. I mean, why wouldn't you put in unknown? Case law after case law talks about C.I.s that have a track record and how we give them difference. And then when you have an unknown. Your time is up. Okay, we'll reserve the rest for rebuttal. Mr. Box. May it please the court. My name is Anthony Box and it is my great honor to serve as the trial counsel in the United States versus Daniel Evans. Mr. Box, this is Judge Kobus. I'm on audio only. Would you address counsel's suggestion that the investigation and corroboration here was simply insufficient? Yes, your honor. I'll be happy to. Your honor, it was a great deal of corroboration. Let me detail a few of the steps addressed by Daniel Evans. First, after he received this information from whom I will call the client, he checked various databases and confirmed that Daniel Evans lived at their residence on California. He checked the driver's license information and Daniel Evans had as his address 3931 California. Evans showed a affidavit. And the affidavit confirmed that it was Evans. He confirmed that Evans sold drugs out of the house. He confirmed that Evans had a firearm. Then the detective ran a criminal history check and found out that Evans had gun and drug convictions. One of the convictions was a felon in possession charge right here in the Eastern District Reserve. Then the detective did a roving drive by surveillance of Evans several times. It doesn't matter. Mr. Goulet talked about he doesn't know whether it's two or three times. Multiple times he drove by the residence. During the surveillance, Mr. Joyner, Detective Joyner, he saw individuals leaving and coming. That in itself is not enough. But once you add so much more, which I will continue to list items, after that, the detectives were able to find out that Evans did not show up in a short time later, leave out of the home. Only after obtaining all of this information was a search warrant applied for. And I would also like the court to know that the affiant was, as Your Honor has pointed out, this is not some unknown tipster. This is an individual, flesh and blood, who subjected themselves to the penalties of perjury by showing up in front of the judge. Moreover, that individual, prior to going to see the judge, met with an assistant circuit attorney in the city who also assessed that individual's credibility. In addition, the circuit court judge from the 22nd Circuit Court in St. Louis City signed this warrant. After that, Judge Bodenhausen, the magistrate judge here, had a hearing about this very issue. And he agreed that the information was corroborated. After that, Judge Weber confirmed Judge Bodenhausen's findings. Three judges, and as Your Honor has stated, those judges' decisions deserve great deference. And the information was corroborated. And Your Honor, you asked about a case. I want to just give you some wording from a Supreme Court case. It's also a national court case. It said explicit and detailed information, which is what we have here, of alleged wrongdoing along with a statement that the event was observed firsthand, which is the case here. It was observed firsthand. Mr. Goulet said it wasn't, but it was observed firsthand. And it was the statement from the search warrant says it was. Entitles the tip to greater weight than otherwise might be the case. That's United States v. Lepper, which is an Eighth Circuit case, 408F3DN39. And it quotes Gates with the United States v. Gates, which is the United States Supreme Court case, 462 U.S. at 234. So all that information was corroborated. It was a great deal I don't think that there is a basis for saying that this information was not corroborated. Counsel, this is Judge Gross. I'd like to spend a little bit of time on the second issue if we could. One of the questions I have is, as I understand the record, the magistrate judge concluded there was reasonable suspicion to support the stop of Evans, but that that is my question. Is the government relying on reasonable suspicion for a terrorist stop, or is the government relying on probable cause for his arrest? And could you address that? The government is relying on probable cause for his arrest, Your Honor. There was a sufficient abundance of probable cause for his arrest. And based on the probable cause, he was arrested. I'll talk about a few of them. So, Counsel, let me let me follow up on that. Is the PC for the arrest based entirely on the probable cause issue in the warrant? No, no, Your Honor. There's more. So this is not a... Well, Counsel, that brings up another good question. And so what is the more? The more is not simply the information provided by the informant, but it was the information that Evans was... the corroboration done outside of the informant. For example, his drugs and guns conviction. One of them was from selling drugs. So he had that. He had the database checks. There was the drive-bys. So this is not simply the words of the affidavit. And also... Counsel, that was all part of the search warrant, wasn't it? What more did you need for the stop of Mr. Evans? That information was sufficient. The information from the search warrant was sufficient, but the search warrant didn't have everything in it, Your Honor. So, again, what specifically is missing? That's the part that I'm failing to grasp here. What was outside the warrant application that supports the arrest? Your Honor, it's the information. I don't believe the information about the database checks was in the search warrant, nor was the information about his driver's license, about confirming his address, maybe the drive-bys. So all of that information was in addition to what the affidavit said he saw, which is that Evans was selling crack, fentanyl, and marijuana from his house. How he would enter the house... Counsel, I'm a little perplexed here. It sounds as though this is all based on the unfounded assertion in the appellant's brief that Bailey precludes reliance on the warrant affidavit as establishing probable cause to arrest. Bailey said nothing to that. Bailey involved an entirely different issue, and certainly did not say that the information in the warrant affidavit couldn't be used or possibly even establish probable cause to arrest the person whose place was being searched. Is there some other case besides Bailey that's ever said, to me, illogically, that the warrant affidavit information isn't part of the totality of the circumstances that Gates says you need to arrest? No, Your Honor, there is no other case that I've been able to find. I didn't think so. And conversely, there is a case directly on point, which is Rhodes, which does say that this PC from the search warrant was sufficient enough to stop the individual who drove away. Counsel, I think that's extremely important in this case, because would you concede that at the time he was stopped, Evans was not fleeing from the residence and was not engaged in any suspicious or illegal activity at the time? That is correct, Your Honor. So, Your Honor, I would like to, you mentioned the fact, Mr. Goulet's argument. There was a question about harmless error. Actually, it was... Good faith.  There's, between the various hearings, the suppression hearing and the trial, there's not one iota of evidence that said that the officers were dishonest or reckless. So even if Mr. Goulet's argument was accepted, good faith would allow this evidence to be admitted. It is the government's position that having an affiant appear in person where they are subjected themselves to perjury by three judges is more than enough corroboration to establish that Daniel Evans was selling drugs out of his house. The statement that made by the affiant was on June 7th. June 7th was the search warrant. And he said that, no, I'm sorry, Your Honor. He said specifically on June 7th, I observed, I witnessed crack, fentanyl, and marijuana in the house. June 8th was the search warrant. There's a very, very... It can't get much more recent in time than the very next day than that, Your Honor. Are there any additional questions from this honorable court? Hearing none, I would ask that this honorable court affirm the decision of the district court.  Mr. Goulet, you're out of time, but I'll give you two minutes of rebuttal to address the second issue. Thank you very much, Your Honors. Yes, I would like to address the second. As the hearings show during the suppression motions, Mr. Evans left the house. He drove straight down California. He was stopped by a marked police car. At that point, with the information that that officer gave, I think a Terry stop was permissible. At the point that they took Mr. Evans out, they handcuffed him, and they searched him in the car. They found no contraband, and they found no gun. So at that point, everything after that is an illegal arrest. They based their evidence on the search warrant as the probable cause. It's clearly said in the argument. And that search warrant had not been executed. And we were talking about cases that the magistrate and the federal court used, Rhodes, Rivera, Webster. Well, in Rhodes, the individual that they picked up was driving around in circles, and an informant who had had over 20 arrests gave the information. In Rivera, you had two control buys, and he was detained while driving away after completing a control buy. And in Webster, you had two control buys and the third buy when the arrest occurred. Totally, totally different than the Thatcher situation here. He was then brought to the German center where he was questioned by Joyner. Joyner said that he gave him his Miranda. And he said, yes, there's children in the house. Then he was driven back to the search and then brought to the station where he was given Miranda again and then makes a statement about money in the house. The sheer presence of giving the Miranda does not cure the taint of the illegal arrest. So even though Miranda was given the taint of the illegal arrest, Miranda doesn't stand up. And for those facts and with everything else we've said, we asked this court respectfully that they vacate the district court's judgment and remand for a new trial with an order to suppress evidence of the testimony about any physical evidence seized on June 14th, 2018, and any evidence or testimony about any statements allegedly made by Daniel Evans to the police on June 14th, 2018. Evidence obtained as a direct result of unconstitutional search and seizure. Thank you, Your Honor. Thank you, Counsel. Thank you, Counsel. The case has been well briefed and argued. We'll take it under advisement. And Mr. Goulet, the court appreciates your assistance under the Criminal Justice Act. Thank you very much, and I hope the weather is good to all of you.